WILLIAM A. SEIBERT, APPELLANT, v. A. GOLDSTEIN COMPANY, APPELLANT; PRESTOLITE COMPANY, INCORPORATED, RESPONDENT.

Submitted July 9, 1923—Decided November 20, 1923.

Plaintiff drove his motor truck in the evening along the Lincoln highway from Newark to Jersey City. A violent snow storm was raging at the time, so that the arc lights upon the highway gave very little light to guide the driver or to disclose objects on the road. Plaintiff testified that he was driving in the centre of the road; that it was necessary to lean over the side of the truck to see in front of him, and that while so doing, and without seeing anything in front of the truck, he suddenly collided with the large motor truck of defendant. The latter truck had stopped because of another truck in front of it had become "stalled" in the storm. Defendant's truck had a pseudo white light hung from the rear near the axle instead of a red light, and although the driver had an assistant riding with him and the truck had been stopped for about five minutes before the collision, neither

he nor his assistant went back to warn the drivers of other vehicles of the obstruction on the highway. *Held*, that whether the plaintiff was guilty of contributory negligence, and whether the defendant was negligent, were properly left to the jury by the trial court.

On appeal from the Hudson County Circuit Court.

For the respondent, *I. Faerber Goldenhorn* and *Saul Nemser*.

For the appellant, *McDermott, Enright & Carpenter*.

The opinion of the court was delivered by

MINTURN, J.   The plaintiff left Newark on the evening of November 27th, 1922, and directed his motor truck along the Lincoln highway, to reach Jersey City, in the face of a violent snow storm. He pictures the situation thus: "The snow was simply flying right in; I pulled my cap over my eyes as much as I dared, so I could see under the cap, on account of the sleet, and the snow cutting, and the wind shield I was wiping that off every five minutes; but the minute I wiped it off the snow flied right on it again, so the best way I used in my precaution was to lean from the side to have as much clear vision as I could of the road; that is why I kept to the centre of the road. While leaning out over the side to see in front of me—without seeing anything in front of me—it was very dark—all of a sudden a large object heaved in front of me, and what was it but this big truck. Before I knew it my truck. having only a frail cast-iron radiator, ran into this big Mack truck of the Goldstein Wholesale Grocery Company." For the resulting damages to his truck and to himself, personally, the plaintiff brought this suit, and obtained a verdict at the Circuit, and from that judgment this appeal was taken. The defendant's truck at the time of the collision was obstructed for about five minutes in its passage by a truck of the Presto-Lite Company, which had become helpless on the road, and that company was also made a defendant in this suit, but as to it the jury found a verdict of no cause of action.

The defense was contributory negligence, and the absence of negligence upon the part of defendants, which inferences it was contended were sufficiently manifest to warrant the direction of a verdict for the defendant. Both motions were denied and are again urged here. The Lincoln highway is one of the most traveled arteries of commerce in the metropolitan environment, and extends its ramifications throughout the state.

Upon this occasion the arc lamps upon the highway were covered with the drifting snow, so that they emitted little light to guide the driver, or to disclose obstructions upon the highway. Upon this state of facts the trial court properly declined to nonsuit or to direct a verdict, since the existence of negligence manifestly was a jury question, for, as we observed in *Napodensky* v. *West Jersey Railroad Co.*, 85 *N. J. L.* 338, upon a similar motion, in an exigency just as critical as that here presented, "negligence is not an *ex cathedra* pronouncement, with which an act may be arbitrarily branded in the abstract, as the judicial eye may conceive it. It presents a concrete proposition for a jury to solve where the facts vary as narrated by opposing witnesses, and from which different minds may conjecture differently, as they may view the conduct of a man in a difficult or trying situation, harassed and confused in the compass of seconds, with conflicting and contending view for self-preservation and deliverance from a zone of danger in which he is charged by law with the natural duty presumably uppermost in his mind, of observing due care for himself and his property." So also in the situation here presented, the question whether the defendant was negligent for his alleged lack of care and foresight, was a question of fact for the jury, and was properly left to their decision.

The essence of negligence in such circumstances is the absence of reasonable foresight for harm, based upon the inquiry, what the reasonably prudent man would have done under similar circumstances.

The plaintiff apparently, as we have seen, was performing his duty to the best of his ability in operating his car, cau-

tiously observing the road as well as he could, and exercising due care, as he conceived it, in a trying situation. At least he was awake to the situation, and the danger and responsibility it created.

What was the defendant at this time doing in the exercise of due care for others lawfully on the highway? If the situation confronting him had presented itself to the conductor upon a railway train, he or his assistant would have traveled back with a lantern a reasonable distance to warn approaching trains of the danger; and such a course it might reasonably be contended was open to the driver of this defendant's truck, since he was accompanied by an assistant, who could have performed that duty, but who made no effort in that direction.

The Motor Vehicle act, with the road provisions of which the defendant must be presumed to have been familiar, required him to exhibit a red light, visible from the rear of his truck; such light to be of sufficient strength to show the numerals upon his license plate "for at least fifty feet in the direction from which the motor vehicle is proceeding." In this instance there was testimony that the defendant's truck, instead of carrying a red light, carried a pseudo white light under the body, or, as the witness relates, "way underneath right above the rear axle," and the light thus carried is described as "white and smoke black." If this warning light prescribed by the act had been carried, it may fairly be presumed that the plaintiff, proceeding cautiously and maintaining a continuous vigil, would have observed it in time sufficient to have brought his truck to a halt, and thus have obviated the collision.

The provisions of the same act required him, in case of a stop upon the highway, to drive his car to the curb or side of the road "in order to allow the right of way to vehicles or passengers." *Pamph. L.* 1915, *p.* 294, ¶ 9. It may have been impossible, in the condition of his car after the accident, for the driver of the defendant's car to drive into the curb or side line of the road, but if that condition existed it did not excuse him of availing himself of the other precautionary

expedients to which we have referred, and which would ensure the safety of those traveling immediately behind him, observing due care, and to whom the exercise of due care by others was in turn due.

· We have in repeated adjudications defined due care as "the reasonable exercise of foresight for harm." *Higgins* v. *Goerke Co.*, 91 *N. J. L.* 464; *Beck* v. *Hines, Director, &c.*, 95 *Id.* 158; *Griffin* v. *Payne, Director, &c., Id.* 490.

So, in any given case, involving that question, where testimony is of a conflicting character, resulting in an issue of fact, the rule is settled, that to the jury must be committed the solution of the inquiry.

The action of the learned trial court being in consonance with this rule, the judgment under review must be affirmed. Such will be the order.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-CHARD, PARKER, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, ACKERSON, VAN BUSKIRK, JJ.    12.

*For reversal*—None.